L. KENNETH POLIKOV, COUNTY ATTORNEY FOR THE COUNTY OF SARPY, NEBRASKA, AND SARPY COUNTY SAFETY PROGRAM, INC., A NEBRASKA CORPORATION, APPELLEES, v. BEVERLY NETH, DIRECTOR, NEBRASKA DEPARTMENT OF MOTOR VEHICLES, IN HER OFFICIAL CAPACITY, AND NEBRASKA DEPARTMENT OF MOTOR VEHICLES, APPELLANTS.

699 N.W.2d 802

Filed June 24, 2005. No. S-04-081.

Jon Bruning, Attorney General, and Lynn A. Melson for appellants.

L. Kenneth Polikov, Sarpy County Attorney, and Michael A. Smith for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

At issue is the constitutionality of Neb. Rev. Stat. §§ 29-3601 through 29-3609 (Cum. Supp. 2004), which purport to authorize and regulate pretrial diversion programs. The appellees, Sarpy County Safety Program, Inc., and L. Kenneth Polikov, the county attorney for Sarpy County, argue that the statutory scheme violates the constitutional principle of separation of powers by infringing upon a county attorney's prosecutorial discretion. The district court for Lancaster County agreed and permanently enjoined the enforcement of §§ 29-3601 through 29-3609 and the regulations implemented under the authority of these sections. We conclude that the power to design a formal pretrial diversion program is a legislative function and that thus, §§ 29-3601 through 29-3609 do not violate the separation of powers clause.

## BACKGROUND

Broadly understood, pretrial diversion could include nearly every disposition of a criminal matter that occurs without a trial.

See Samuel J. Brakel, *Diversion from the Criminal Process: Informal Discretion, Motivation, and Formalization*, 48 Denv. L.J. 211 (1971). This case, however, involves a particular subset of pretrial diversion: situations when a prosecutor agrees to forgo prosecution in exchange for the accused's promise to perform a condition or set of conditions meant to rehabilitate the accused. As long as the accused completes the condition, charges will not be brought. When we refer to pretrial diversion, this is what we mean.

Individual prosecutors have always practiced pretrial diversion on an informal basis. See 4 Wayne R. LaFave et al., Criminal Procedure § 13.6(a) (2d ed. 1999). Generally, this had been done in a "haphazard way." *Id.* at 84. They used no eligibility guidelines to decide whether the accused should be allowed to avoid prosecution. Further, the conditions that the accused had to meet were set on a case-by-case basis and usually involved such things as paying restitution to the victim or joining the military. See, *id.*; Brakel, *supra.*

In the late 1960's, however, jurisdictions throughout the nation began to formalize pretrial diversion. These formal programs were different from informal diversion practices in two key respects. First, the formal programs usually had set eligibility guidelines, as well as standardized admission practices. Second, instead of setting the conditions that the accused would have to meet to avoid prosecution on a case-by-case basis, the accused agreed to complete a preexisting program of supervised rehabilitation. These programs involved elements like classwork, job training, and substance abuse treatment. See, generally, ABA Comm. on Corr. Facilities and Servs., Legal Issues and Characteristics of Pretrial Intervention Programs (1974); Note, *Criminal Practice—Pretrial Intervention Programs—An Innovative Reform of the Criminal Justice System*, 28 Rutgers L. Rev. 1203 (1975); Note, *Pretrial Diversion from the Criminal Process*, 83 Yale L.J. 827 (1974).

In Nebraska, as in many other jurisdictions, the county attorney began formalizing pretrial diversion programs in individual counties. Some county attorneys, however, expressed concern over whether they had the authority to implement formal diversion programs. To address these concerns, the Legislature, in 1979, made

its initial foray into the world of formalized pretrial diversion. See, Statement of Purpose and Judiciary Committee Hearing, L.B. 573, 86th Leg., 1st Sess. (March 6, 1979).

This initial attempt to regulate formal pretrial diversion programs was not extensive. The statutory scheme assured county attorneys that they had the authority to establish a formal pretrial diversion program, providing "[t]he county attorney of any county may establish a pretrial diversion program with the concurrence of the county board." § 29-3602. If the county attorney decided to create a formal program, he or she had wide discretion in designing the program. The only limits the Legislature placed on the county attorney's discretion were meant to ensure fair treatment for the accused. Specifically, the Legislature required (1) formal, written eligibility guidelines; (2) maximum time limits on participation; (3) the opportunity for defendants and their attorneys to review program requirements; (4) the dismissal of charges upon completion of the program; (5) a guarantee that participants could withdraw from the program and be returned to the court process; (6) that enrollment could not be conditioned upon a plea of guilty; and (7) that if enrollment in a program was denied, written reasons for the denial had to be made and the defendant had to be given the opportunity for administrative review of the denial. § 29-3603.

Between 1979 and 2002, only two minor changes were made to the statutory oversight of pretrial diversion programs. In 1982, the Legislature made any person charged with either driving while intoxicated or refusing to submit to a chemical test ineligible to participate in a pretrial diversion program. § 29-3604 (Reissue 1995). And, in 1999, the Legislature gave city attorneys express permission to establish pretrial diversion programs. § 29-3602 (Cum. Supp. 2004).

In 2002, however, the Legislature amended the pretrial statutory scheme to create a dichotomy between two types of offenses, "minor traffic violations" and "criminal offenses." Excluded from the definition of "minor traffic violations" are a wide variety of traffic violations as well as any felony or misdemeanor. § 29-3605 (Cum. Supp. 2004). "Criminal offenses," although not expressly defined, would seem to include any crime excluded from the definition of "minor traffic violations."

Under the 2002 amendments, the legislative oversight of pre-trial diversion programs for "criminal offenses" is unchanged. If a county attorney decides to set up a program for "criminal offenses," it must include the requirements, set out in § 29-3603, that ensure the accused is treated fairly. But beyond these minimal limitations, county attorneys retain the same broad discretion to determine the type of diversion program or programs that they used under the 1979 legislation.

On the other hand, for the other class of offenses, i.e., minor traffic violations, the 2002 legislation reduced the authority of the county attorney to design a formal pretrial diversion program. Under § 29-3606(1), if a county attorney decides to set up a pretrial diversion program for minor traffic violations, the program must "consist of a driver's safety training program." The curriculum used in the driver's safety training program and the fee charged must be approved by the Department of Motor Vehicles (Department). § 29-3606(2)(a) and (b). In addition, program administrators are required to keep a record of attendees and share those records with similar programs throughout the state. § 29-3606(3). Program administrators are to use these records to ensure that no individual takes an approved driver's safety training course in Nebraska more than once within any 3-year period. *Id.* Before any organization or governmental entity can offer a driver's safety training program, it must obtain certification from the Department. § 29-3607. Finally, the amendments prevent the diversion of any person holding a commercial driver's license to a driver's safety training program to the extent that doing so would be "in noncompliance with federal law or regulation and subject the state to possible loss of federal funds." § 29-3608.

After the 2002 legislation was passed, the Department, acting under the authority granted to it by the Legislature, adopted regulations governing driver's safety training programs. See, generally, 250 Neb. Admin. Code, ch. 3 (2003). Among these regulations was the requirement that to be certified, a program had to include an 8-hour class. § 003.01

## PROCEDURAL BACKGROUND

Before the 2002 amendments to the pretrial diversion statutes, Polikov, as the county attorney for Sarpy County,

diverted persons accused of minor traffic offenses to a driver's safety training program operated by Sarpy County Safety Program, a private, nonprofit corporation. The program, however, did not meet the requirements set out in the regulations adopted by the Department. Thus, after the 2002 legislation and the Department regulations became effective, the appellees filed this lawsuit, naming as defendants the Department and its director (collectively the DMV).

In the appellees' amended complaint, they alleged that §§ 29-3601 through 29-3609 violate the constitutional principle of separation of powers. They requested that the court grant an injunction staying the enforcement of the statutes as well as the regulations adopted under the statutes. The district court for Lancaster County agreed and granted a permanent injunction forbidding the enforcement of §§ 29-3601 through 29-3609 and the regulations implemented under the authority of these sections.

## ASSIGNMENT OF ERROR

The DMV assigns that the district court erred in determining that §§ 29-3601 through 29-3609 and the Department regulations adopted under the authority of those statutes were unconstitutional.

## STANDARD OF REVIEW

■ Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

■ A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Id.* The burden of establishing a statute's unconstitutionality is on the party claiming it to be unconstitutional. *Id.*

## ANALYSIS

■ The powers of government of this state are divided into three distinct departments, the legislative, executive, and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted. Neb. Const. art. II, § 1. This clause prohibits one branch of

government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives. *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997). It is the beam from which our system of checks and balances is suspended. *Id.*; *State ex rel. Spire v. Conway*, 238 Neb. 766, 472 N.W.2d 403 (1991).

Because the Nebraska Constitution, unlike the federal Constitution and those of several other states, contains an express separation of powers clause, this court has been less willing to find overlapping responsibilities between the three branches of government. See *State v. Philipps*, 246 Neb. 610, 521 N.W.2d 913 (1994). Thus, regarding the separation between the legislative and executive branches, we have said that they should be " 'kept as distinct and independent as possible.' " *Shepherd*, 251 Neb. at 532, 557 N.W.2d at 695 (quoting 16 Am. Jur. 2d Constitutional Law § 323 (1979)).

PARTIES' ARGUMENTS

As we understand their argument, the appellees contend that the county attorney, at least when prosecuting criminal cases, is a member of the executive branch of government and that as a result, the county attorney has the authority to wield the inherent executive power of prosecutorial discretion. According to them, the power of prosecutorial discretion includes the authority to design a formal pretrial diversion program as the county attorney sees fit, and thus the separation of powers clause prevents the Legislature from regulating the design of formal pretrial diversion programs.

At trial, Polikov testified that §§ 29-3601 through 29-3609 and the regulations adopted under these sections have prevented him from designing the formal pretrial diversion program of his choice in three particular ways. First, he testified that his pretrial diversion program for minor traffic violations would require only a 4-hour class, while the regulations would require an 8-hour class. Second, the statutory scheme requires him to exclude persons who have taken a driver's safety training program once in the last 3 years, but according to Polikov, he would adopt a more flexible rule. Finally, Polikov claimed that in at least some situations, he would allow persons accused of committing criminal

offenses other than minor traffic violations to avoid prosecution by taking a driver's safety training program.

The DMV makes two counterarguments. First, it contends that the county attorney's office is part of a political subdivision rather than part of the executive branch and that therefore, the principle of separation of powers between the executive and the legislative branch is inapplicable. Second, it argues that to the extent § 29-3602 places limits on a county attorney's prosecutorial discretion, the limits are minimal and thus constitutional.

### COUNTY ATTORNEY AND APPLICABILITY OF SEPARATION OF POWERS

First, we consider the DMV's argument that the office of the county attorney is part of a political subdivision rather than the executive branch and that therefore, the separation of powers clause is inapplicable.

The extent to which the separation of powers clause applies in the relationship between the Legislature and political subdivisions like cities and counties is not entirely clear. Compare *State v. Ure*, 91 Neb. 31, 37-38, 135 N.W. 224, 226-27 (1912) (stating separation of powers clause "does not attempt to limit the [L]egislature as to its power to prescribe the manner in which municipalities or local subdivisions of the state may administer their local affairs"), with *Searle v. Yensen*, 118 Neb. 835, 226 N.W. 464 (1929) (stating that Legislature may delegate part of its legislative function to subdivision but only to extent that recipient is member of same branch of government), and *State v. Neble*, 82 Neb. 267, 117 N.W. 723 (1908) (suggesting that separation of powers clause extends to counties).

■ To answer the DMV's argument, however, we need not resolve this ambiguity. Although the county attorney is a county officer, when the county attorney prosecutes cases, he or she does so not only on behalf of the county, but also on behalf of the state. Neb. Rev. Stat. § 23-1201 (Cum. Supp. 2004). See, also, *Dinsmore v. State*, 61 Neb. 418, 85 N.W. 445 (1901). Thus, when prosecuting criminal cases, the county attorney is functioning as an arm of the executive branch of the state government and the separation of powers clause applies. Accord *State v. Moore*, 210 Neb. 457, 316 N.W.2d 33 (1982).

## Separation of Powers and Formal
## Pretrial Diversion Programs

Next, we turn to the heart of the matter: whether the pretrial diversion statutes violate the separation of powers clause. Sections 29-3601 through 29-3609 regulate the prosecutor's ability to design a formal diversion program as he or she sees fit. Thus, the issue is whether the power to design a formal pretrial diversion program is an executive function or a legislative function.

In arguing that the power to design a formal pretrial diversion program is an executive function, the appellees rely on the power of prosecutorial discretion. We have recognized that prosecutorial discretion is an inherent executive power. See, *Moore, supra*; *State v. Grayer*, 191 Neb. 523, 215 N.W.2d 859 (1974). One of the key aspects of prosecutorial discretion is the charging function, the power to determine what, if any, charges should be brought against a person accused of committing a crime. See *Moore, supra*. As a result of the charging function, the prosecutor has the discretion to choose to charge any crime that probable cause will support or, if the prosecutor chooses, not to charge the accused at all. See, generally, 4 Wayne R. LaFave et al., Criminal Procedure § 13.2(a) (2d ed. 1999). Some commentators suggest that this discretion makes the prosecutor the single most powerful person in the criminal justice system. Kenneth J. Melilli, *Prosecutorial Discretion in an Adversary System*, 1992 BYU L. Rev. 669 (1992); Robert L. Misner, *Recasting Prosecutorial Discretion*, 86 J. Crim. L. & Criminology 717 (1996).

The informal diversion practices traditionally engaged in by prosecutors have been seen as a part of the charging function. See, *Davis v. Municipal Court (People)*, 46 Cal. 3d 64, 757 P.2d 11, 249 Cal. Rptr. 300 (1988); *State v. Greenlee*, 228 Kan. 712, 620 P.2d 1132 (1980); ABA Comm. on Corr. Facilities and Servs., Legal Issues and Characteristics of Pretrial Intervention Programs (1974). According to the appellees, the charging function is also broad enough to allow the county attorney to formalize diversion practices.

We recognize that other courts have endorsed language supporting the appellees' claim. See, e.g., *Irby v. United States*, 464

A.2d 136, 141 (D.C. 1983) ("diversion is a program initiated by the United States Attorney's Office and 'owes its existence and operation solely to prosecutorial discretion' "). We also recognize that other courts that follow a more malleable approach to separation of powers have characterized the power to design formal pretrial diversion programs as "quasi-legislative" and thus, within the purview of both the legislative and executive branches of government. See, e.g., *Davis, supra.* We conclude, however, that formalizing the diversion process is something separate and apart from the mere exercise of the charging function and is better understood as a legislative function.

The hallmark of the charging function is case-by-case decisionmaking; the prosecutor weighs the mitigating and aggravating factors surrounding a case and determines how to proceed. While informal diversion can fairly be described as an application of this power, the very purpose of formalizing pretrial diversion is to exchange this case-by-case analysis for uniform eligibility requirements and standardized, government-monitored rehabilitative programs. See Note, *Pretrial Diversion from the Criminal Process,* 83 Yale L.J. 827 (1974). So, in designing a formal pretrial diversion program, the prosecutor is no longer determining that a certain type of rehabilitation will benefit a particular person, but, rather, is making a broader public policy decision that a particular type of rehabilitative program is the best way to deal with a particular type of crime. Cf. *State v. Leonardis,* 73 N.J. 360, 375 A.2d 607 (1977) (concluding that setting up pretrial diversion program goes beyond prosecutor's charging function); *State v. Tracy M.,* 43 Wash. App. 888, 720 P.2d 841 (1986).

Moreover, formalization creates a mechanism to move large numbers of persons accused of committing particular types of crimes away from adjudication and into rehabilitative programs supervised by government officials. As a result, the adoption of formal pretrial diversion programs shifts the focus of the criminal justice system. When the system favors adjudication followed by punishment for a particular crime, the goals are primarily deterrence and retribution. But formal pretrial diversion programs, by creating greater access to the diversion process, make the rehabilitation of the accused the primary goal.

█ Thus, formal pretrial diversion does not represent a natural outgrowth of the charging function, but, rather, a substantial change in the way society responds to the challenge of crime. It is the legislative branch of government that is charged with defining crimes and punishments. See, *State v. Divis*, 256 Neb. 328, 589 N.W.2d 537 (1999); *State v. Stratton*, 220 Neb. 854, 374 N.W.2d 31 (1985). In doing so, it sets the broad policy goals of this state's criminal justice system, including whether for a particular type of crime the corrective goal should be retribution, deterrence, or rehabilitation. We believe that the formalization of pretrial diversion programs is the type of broad restructuring of the goals of the criminal justice system that is entrusted to the Legislature rather than to the executive branch. Therefore, we hold that the power to design formal pretrial diversion programs is a legislative power and that thus, the district court erred in holding that §§ 29-3601 through 29-3609 are unconstitutional.

█ We find it necessary, however, to make two additional points to clarify the scope of our holding. First, although the power to design formal pretrial diversion programs is a legislative function, the use of informal diversion is included in the executive power of prosecutorial discretion. Thus, the Legislature cannot use its power to design formal pretrial diversion programs in a way so as to limit the prosecutor's power to engage in the informal diversion process. Here, the pretrial diversion statutes have not crossed this line; under § 29-3602, the prosecutor has the authority to continue to use informal diversion, i.e., case-by-case diversion decisions, rather then set up a formal pretrial diversion program.

█ Second, although the power to design a pretrial diversion program is a legislative one, the power to determine whether to divert a particular person to an established formal pretrial diversion program, at least before the accused is charged, is an executive power, encompassed within the charging function. See *Clayton v. Lacey*, 256 Neb. 282, 589 N.W.2d 529 (1999) (concluding that person accused of burglary could not bring petition in error challenging county attorney's decision to exclude him from preestablished diversion program because county attorney's decision was exercise of prosecutorial discretion rather than judicial act).

40

## CONCLUSION

We conclude that the power to design a pretrial diversion program is a legislative function and that therefore, in enacting §§ 29-3601 through 29-3609, the Legislature did not run afoul of the separation of powers clause. Accordingly, we reverse the decision of the district court.

REVERSED.