IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HINZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STEVEN M. HINZ, APPELLANT.

Filed December 13, 2016.    No. A-16-568.

Appeal from the District Court for Lancaster County, JODI NELSON, Judge, on appeal thereto from the County Court for Lancaster County, JAMES L. FOSTER, Judge. Judgment of District Court affirmed.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Jessica Kerkhofs, Assistant Lincoln City Attorney, for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Steven M. Hinz was found guilty of one count of driving while under the influence. The county court for Lancaster County sentenced him to 6 months' probation and ordered him to pay a $500 fine. Hinz appealed his conviction to the district court, where it was affirmed. Hinz now appeals his conviction to this court. Following our review of the record, we affirm.

## BACKGROUND

On June 6, 2015, Lincoln Police Department Officer Kenneth Morrow was on patrol on northbound interstate 180 in Lancaster County, Nebraska. Shortly after 2 a.m., he was walking back to his cruiser upon completing a traffic stop on the Superior Street off ramp when a white

Dodge pickup caught his attention. The pickup was among a group of cars going north on I80 and it caught Morrow's attention because its lights were remarkably bright. Morrow testified later that he could only see a single block of light and it looked like a train was coming towards him. He said that the lights were so bright that he could not see anything else in that direction, such as the vehicles behind or to the side of the pickup. The truck was approximately 300 yards away from Morrow when he first saw it as it proceeded towards him on the Superior Street off ramp. As the truck came closer, Morrow could see that the lights were actually separate from the vehicle's headlights. The headlights were turned on but apart from the headlights was what Morrow described as an LED light bar that spanned the entire front of the vehicle's grill. It was these lights, rather than the headlights, that were extraordinarily bright.

Immediately before passing Morrow's cruiser on the off ramp, the driver turned off the bright lights, leaving only his regular headlights. Morrow acknowledged that the entire time the bright lights were on, he was outside of his vehicle and did not signal to the driver in any way to turn his lights down.

After the pickup passed, Morrow got back into his cruiser and began pursuit. He briefly followed the vehicle before initiating a traffic stop at the intersection of First and Benton. Morrow stated that while following the pickup he did not observe the driver commit any additional traffic violations. He testified that he believed the bright lights were a dangerous hazard to other drivers on the road and his sole reason for stopping the vehicle was the brightness of the lights.

Morrow made contact with the driver, later identified as Hinz. Upon making contact, Morrow noticed the odor of alcohol coming from inside the vehicle or on Hinz's person and he initiated a driving under the influence investigation. During the course of the investigation, Hinz admitted that he had been drinking. He was subsequently placed under arrest for driving under the influence of alcohol and cited for both that offense as well as failure to dim his lights pursuant to Lincoln Municipal Code (L.M.C.) § 10.22.050. He was charged with driving under the influence of alcohol in violation of L.M.C. § 10.16.030 and operating a motor vehicle with a headlamp that projected a glaring or dazzling light in violation of L.M.C. § 10.22.050.

Hinz filed a demurrer and a motion to quash in regard to the headlamp charge, as well as a motion to suppress. He also filed a motion to declare L.M.C. § 10.22.050 unenforceable. Before any hearings on these motions could take place, the State dismissed the headlamp charge, leaving only the driving under the influence charge.

Despite the dismissal of the headlamp charge, Hinz proceeded on his motion to declare L.M.C. § 10.22.050 unenforceable because it was the basis for the stop. The county court overruled Hinz's motion to declare the ordinance unenforceable as well as his motion to suppress. After a bench trial, the county court found Hinz guilty of driving under the influence.

Hinz appealed his conviction to the district court, alleging that the county court erred in overruling his motion to suppress, failing to declare the Lincoln ordinance unenforceable, finding him guilty of driving under the influence, and overruling several evidentiary objections at trial. The district court affirmed Hinz's conviction. Hinz now appeals to this court.

ASSIGNMENT OF ERROR

Hinz's sole assignment of error is that the county court and the district court erred in failing to sustain his motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial court's order on a motion to suppress based on a claimed violation of the Fourth Amendment, appellate courts apply a two-part standard of review. *State v. Hill*, 288 Neb. 767, 851 N.W.2d 670 (2014); *State v. Matit*, 288 Neb. 163, 846 N.W.2d 232 (2014). Regarding historical facts, appellate courts review the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that appellate courts review independently of the trial court's determination. *Id.*

## ANALYSIS

Hinz argues that the district court erred in affirming the county court's order overruling his motion to suppress. He argues that his Fourth Amendment rights were violated because he was stopped on the basis of driving with glaring or dazzling lights but Morrow did not first signal to him that he should dim his lights as required by Neb. Rev. Stat. § 60-6,224 (Reissue 2010). We disagree.

The Fourth Amendment guarantees the right to be free from unreasonable search and seizure. *State v. Bol*, 288 Neb. 144, 846 N.W.2d 241 (2014). This guarantee requires that an arrest be based on probable cause and limits investigatory stops to those made upon an articulable suspicion of criminal activity. *Id.* A traffic stop requires only that the investigating officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *Id.* To determine whether there is reasonable suspicion for an officer to make an investigatory stop, the totality of the circumstances must be taken into account. *Id.*

Morrow stopped Hinz's vehicle based upon a violation of L.M.C. § 10.22.050. It states in pertinent part that:

> The headlamps of motor vehicles shall be so constructed, arranged, and adjusted that, except as provided in subsection (b) of this section, they shall at all times mentioned in Section 10.22.030, and under normal atmospheric conditions and on a level road, produce a driving light sufficient to render clearly discernible a person 200 feet ahead, but shall not project a glaring or dazzling light to persons in front of such headlamp.

Section 10.22.060 makes it unlawful for any person to drive on any of the streets or alleys in the city any vehicle which does not comply with the requirements of section 10.22.050.

> Neb. Rev. Stat. § 60-6,224 requires that:
>
> Whenever any person operating a motor vehicle on any highway in this state meets another person operating a motor vehicle, proceeding in the opposite direction and equipped with headlights constructed and adjusted to project glaring or dazzling light to persons in front of such headlights, upon signal of either person, the other shall dim the headlights of his or her motor vehicle or tilt the beams of glaring or dazzling light projecting therefrom downward so as not to blind or confuse the vision of the operator in front of such headlights.

Failure to comply with §60-6,224 is a Class V misdemeanor.

Hinz claims that Morrow's stop of his vehicle violated the Fourth Amendment because it was based on his driving with glaring or dazzling lights but Morrow did not first signal for him to

dim his lights as required by § 60-6,224. Hinz contends that the Lincoln municipal ordinance that Morrow relied upon in making the stop is in conflict with the state statute, thereby rendering the ordinance void and unenforceable and the stop unlawful.

The central flaw in Hinz's argument is that Morrow made the stop based upon violation of the municipal ordinance, not the state statute. And, as stated above, a traffic stop requires only that the investigating officer have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *State v. Bol, supra*. Much of Hinz's argument is devoted to the application of § 60-6,224 to this case and the predicate facts necessary for finding a violation of that section. However, we do not find this analysis applicable since Hinz was never charged under § 60-6,224.

Under Nebraska law, a traffic violation, no matter how minor, creates probable cause for an officer to stop the driver of the vehicle. *State v. Sanders*, 289 Neb. 335, 855 N.W.2d 350 (2014). In determining whether a vehicle stop was reasonable, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation; rather, a vehicle stop is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred. *Id.* In other words, the fact that an officer does not issue a citation for a traffic violation, or that a charge is subsequently dismissed by the State or the court, does not in and of itself render a vehicle stop unlawful.

In this case, the county court found that L.M.C. § 10.22.050 "was in effect and was a valid ordinance at that time, having not been found unconstitutional or overruled by a court. When Officer Morrow saw those dazzling lights . . . he was relying on a valid ordinance in effect." We agree with the trial court that Morrow could reasonably rely upon the city ordinance in determining whether a driver had committed a traffic violation. Upon observing Hinz's vehicle, Morrow concluded that its use of glaring or dazzling lights was in violation of the ordinance, giving rise to sufficient reasonable suspicion to allow him to conduct a traffic stop. Morrow also testified that he believed the lights created a hazard for other drivers due to their intensity. The fact that the charge connected to Morrow's original reason for the stop was eventually dismissed has no effect on the validity of the stop itself.

Additionally, Hinz claims that because L.M.C. § 10.22.050 is in conflict with the state statute it is void and unenforceable. We need not address whether the municipal code section is void and unenforceable because, the issue before us is whether Morrow had a reasonable suspicion based on articulable facts which indicate that a crime has occurred, is occurring, or is about to occur. We conclude that he did.

Hinz makes several public policy arguments as to why the municipal ordinance should be found void and the stop should be found unlawful. However, because we find that we need not address whether L.M.C. § 10.22.050 is void and unenforceable, we likewise do not address these arguments that depend upon the finding that the ordinance is unlawful.

Furthermore, we disagree with Hinz's assertion that because the State dismissed the headlamp charge, it was conceding that the stop was unconstitutional. The State retains broad discretion as to whom to prosecute and what charges to file. *State v. Sanodval*, 280 Neb. 309, 788 N.W.2d 172 (2010). This includes the choice not to charge the accused at all. *Polikov v. Neth*, 270 Neb. 29, 699 N.W.2d 802 (2005). While law enforcement officers typically initiate an arrest, they are not required to be legal scholars. *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006). It is the

prosecutor that is ultimately responsible for evaluating the evidence and determining which charges, if any, he or she chooses to file, and such decision is based upon a variety of considerations. See *State v. Bartlett*, 210 Neb. 886, 317 N.W.2d 102 (1982). Thus, we do not interpret the State's decision to dismiss the headlamp charge as a concession of anything.

Hinz also claims that, if upheld, the reasoning used by the lower courts will make the state statute and the Fourth Amendment meaningless. He argues that such a decision would render § 60-6,224 pointless and that to approve of the "I believe what I saw was dangerous" standard to justify vehicle stops will lead to abuse by law enforcement officers, limited only by their imaginations.

However, we again note that § 60-6,224 was not the basis for the stop. The only issue at bar is whether the arresting officer had reasonable suspicion to stop Hinz's vehicle. We have answered that question in the affirmative due to Morrow's reliance on an ordinance that was valid and in effect at the time of the stop. Moreover, Hinz's claim that the lower courts relied on a standard wherein they upheld the stop simply on the basis of the officer's testimony that he believed what he saw was dangerous is incorrect. The county court specifically stated that it found the stop to be lawful due to Morrow's reasonable reliance on a valid ordinance and his personal observations that a violation had occurred.

We conclude that Morrow justifiably relied upon a perceived violation of L.M.C. §10.22.050; thus, he had a reasonable suspicion to stop Hinz's vehicle.

CONCLUSION

Following our review of the record, we find Hinz's assignment of error to be without merit and therefore affirm the district court's ruling affirming the county court's denial of the motion to suppress.

AFFIRMED.