IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BROWN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DEAVIEA D. BROWN, APPELLANT.

Filed July 24, 2018.    No. A-18-194.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Deaviea D. Brown was 17 years old when he was charged in the Lancaster County District Court with delivering, manufacturing, or possessing with intent to deliver marijuana. He filed a motion to transfer the case to juvenile court, which was denied. Brown appeals, assigning error to the denial of the motion to transfer. We affirm.

## BACKGROUND

On December 27, 2017, the State filed an information charging Brown with delivering, manufacturing, or possessing with intent to deliver marijuana, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 2016), a Class IIA felony. The information indicated that the events which gave rise to the charge occurred "on, about, or between May 18, 2017, and November 24, 2017." During that period of time, Brown was 17 years old. His date of birth is April 30, 2000.

- 1 -

Brown filed a motion to transfer the matter to juvenile court under Neb. Rev. Stat. §§ 29-1816 (Supp. 2017) and 43-261 (Reissue 2016). Specifically, Brown asked the district court to waive jurisdiction of the matter to the separate juvenile court for further proceedings under chapter 43, article 2, of the Nebraska Revised Statutes.

A juvenile transfer hearing was held by the district court. During this hearing, the State called two witnesses to testify: Melissa Martinez, a senior probation officer who supervises juveniles who are placed on probation; and Officer Max Hubka, a Lincoln Police Officer who is assigned to the department's gang unit and who had recently arrested Brown. Additionally, the State offered into evidence numerous exhibits, including juvenile court records, police reports, photographs and videos obtained from Brown's "Snapchat account," and notes regarding Brown's behavior in the Youth Services Center, where he has been detained since his arrest on November 24, 2017.

The evidence offered by the State revealed that on November 7, 2017, officers with the Lincoln Police Department "gained verbal consent to enter [an] apartment and speak with the occupants." Brown was found hiding in the back bedroom of the apartment. He was taken into custody because police wanted to question him regarding his possession of a gun back in May. Ultimately, he was released from police custody after speaking with investigators.

While officers were in the apartment, they smelled "the odor of burnt marijuana." As a result, they seized the apartment and obtained a search warrant. During the search of the apartment, more than 23 grams of marijuana was found in various locations. In the bedroom where Brown was found, officers located "plastic baggies containing user quantities" of marijuana. In addition, officers found a digital scale and loose marijuana in that bedroom. In Brown's backpack, officers found additional small plastic baggies.

Officers also obtained a search warrant to view Brown's "Snapchat account." This social media account contained a variety of photographs and videos which had been posted by Brown. Included within Brown's Snapchat account were photos of him displaying what Officer Hubka explained were hand signs to demonstrate allegiance to a particular gang, holding guns, possessing or using marijuana, possessing large amounts of currency, and displaying what appears to be a gold electrical plug on a necklace. Officer Hubka indicated that "the word plug is pretty universally known on the street to mean a drug dealer or somebody that supplies you with drugs." Also included within the Snapchat account were videos of Brown advertising marijuana and codeine for sale, fighting with other individuals, holding a gun, displaying "gang hand signs," using marijuana, and explaining why he is a better drug dealer than other drug dealers.

Officer Hubka testified at the hearing that based upon his training and experience and his investigation into Brown, he believed that Brown is a member of a criminal street gang. Specifically, Officer Hubka opined that Brown is a member of the Bloods criminal street gang, "probably the Paint Boy Entertainment set." He further explained:

> [W]e know that there are multiple individuals who claim to be associated with the Paint Boy Entertainment group. We have social media evidence of them displaying gang hand sign[s], wearing specific clothing. Uh, and basically . . . claiming membership or admitting membership to that set. Uh, we know that they are also involved in . . . gang-related crime, such as marijuana sales . . . possession of firearms and those types of crimes. . . . Mr. Brown

. . . would be classified as a member. And then . . . the set of Paint Boy Entertainment, as well as the overlying Bloods criminal street gang.

On November 24, 2017, law enforcement located Brown during a traffic stop. Brown was arrested and, ultimately, detained as a result of the drugs found during the search of the apartment he was in on November 7 and as a result of the search of his Snapchat account. When he was arrested, he possessed additional marijuana and drug paraphernalia.

Martinez testified that at the time of Brown's arrest in November 2017, he was no longer attending high school even though he had not yet graduated. He was not employed and he did not have a stable living situation. Brown told Martinez that he "doesn't stay at home." Instead, he stayed with relatives or friends. The apartment he was in on November 7, belonged to his paternal aunt, whom he had been residing with for an unknown period of time. Brown admitted to Martinez that he used marijuana almost every day and that he occasionally drank alcohol.

The State offered into evidence documentation reflecting Brown's prior involvement with the separate juvenile court. In April 2013, the State filed a petition in juvenile court alleging that Brown had been habitually truant from school between the dates of August 15, 2012, and April 4, 2013. Brown participated in Lancaster County's truancy diversion project, and the juvenile court case was ultimately dismissed in May 2014, after he had completed the requirements of that program. However, in July 2013, while the April juvenile proceedings were pending, Brown was cited by police after he was caught using a "Butcher knife" to carve the word "Blood" into a picnic bench at a public park. The arresting officer's notes indicate that "Brown was uncooperative with officers. [He] laughed/joked, [and] thought incident was funny." Charges were not filed against Brown for this incident because he completed a diversion plan.

In April 2015, the State filed a petition in juvenile court which alleged that Brown had trespassed at Lincoln Southeast High School. Police reports indicate that Brown refused to leave the school after being repeatedly told to do so. In addition, he used profanity when speaking with school officials. In June, a supplemental petition was filed which alleged that Brown was habitually truant from school between the dates of August 12, 2014, and May 21, 2015. Ultimately, Brown admitted to the allegation that he had been habitually truant from school, and the State dismissed the allegation of trespass. Brown was placed on probation for a period of 1 year. As a part of his probation, he was required to attend school regularly, wear a tracking device, participate in individual counseling, undergo a substance abuse evaluation, and participate with "frequent" drug testing. In November 2016, the juvenile court entered an order indicating that Brown's period of probation had ended and that he should be released from probation "unsatisfactory." Apparently, Brown had left Nebraska for an extended period of time without first informing his probation officer or the juvenile court.

In September 2017, the State filed a petition in the juvenile court which alleged that Brown had possessed with intent to deliver marijuana and that he had possessed $646 in cash which was intended to be used to facilitate the manufacturing, distribution, delivery, dispensing, or possessing with intent to manufacture, distribute, deliver, or dispense a controlled substance. Police reports indicate that the allegations in the petition were the result of a traffic stop of a car in which Brown was driving in July. At that time, law enforcement discovered that Brown's driver's license had

previously been suspended "for failure to comply." Officers also noticed the smell of marijuana coming from the vehicle. A search of the vehicle revealed "numerous plastic sandwich bags in the driver[']s door pocket." In addition, underneath the driver's seat was a small plastic bag containing .8 grams of marijuana. Officers also located a digital scale in a small compartment between the two front seats, and in a black backpack in the back seat was "a gallon sized Ziploc bag containing several individual packaged bags, consistent with the ones found in the driver[']s door pocket, all containing marijuana." When Brown was searched, $646 was found in his pants pocket.

On November 27, 2017, the State filed a supplemental petition which added an allegation of unlawful possession of a handgun to Brown's pending juvenile court proceedings. This charge stemmed from a separate traffic stop which had occurred in May 2017. During that stop, law enforcement found a stolen semi-automatic handgun in a back pack that was believed to belong to Brown. The gun was loaded with a magazine containing 12 rounds with an additional round in the chamber. A second magazine containing 12 more rounds was also found in the back pack.

On December 1, 2017, shortly before the information regarding the current charge was filed in district court, the State dismissed count one of the original juvenile court petition, which alleged that Brown had possessed with intent to deliver marijuana. Later, on January 12, 2018, the State dismissed count two of the original petition, which alleged that Brown had possessed $646 in cash which was intended to be used to facilitate the manufacturing, distribution, delivery, dispensing, or possessing with intent to manufacture, distribute, deliver, or dispense a controlled substance. That same day, Brown pled no contest to the sole count in the supplemental petition, which alleged that he unlawfully possessed a handgun. As a result of his plea, he was adjudicated as a juvenile as defined by Neb. Rev. Stat. § 43-247(1) (Reissue 2016).

Martinez testified that there are services available to Brown through the juvenile court that he has not previously participated in, including drug court supervision and placement outside of his home. However, she also testified that she is concerned about Brown's willingness to follow through with juvenile court services because he has previously failed to take juvenile court orders seriously. In fact, since Brown's arrest in November 2017, he has been detained at the Youth Services Center in Lincoln. Behavior notes from the center indicate that Brown has been disrespectful to staff, including using profanity and threatening language. In addition, he has repeatedly spoken of trying to escape from the center.

After the State rested, Brown offered the testimony of his mother, Crystal Mapp. Mapp testified that in November 2017, Brown was staying with her "for the majority of the time." However, she indicated that Brown did spend some time with his two aunts because he helped them with their young children. She indicated that Brown was no longer attending school, but he had applied for and been accepted into the Job Corps program. In a letter authored by an employee of the program, Job Corps is described as "offer[ing] students the opportunity to earn their High School diploma along with a Trade Certification." Students can also become licensed drivers. The letter indicates that Brown was supposed to report to Job Corps on November 14, 2017, but he did not do so. Mapp indicated that when Brown was attending public school, he had anxiety and a diagnosed "emotional disturbance," which ultimately required him to participate in an individualized education plan. She also admitted that Brown struggled with his attendance at school.

Mapp explained that in the last year, she and Brown had spent significant time outside of Nebraska. She testified that Brown was in Georgia with her from January through May 2017. They were in Georgia again from October to early November. Mapp indicated that these trips were centered around the family's business, Paint Boy Entertainment, which she described as a legitimate music label that is not affiliated with any gang. Mapp testified that Brown does some creative work for the artists represented by Paint Boy Entertainment, including dancing on stage. During their trips to Georgia, they were renovating a "mansion," recording in the studio, and "networking."

At the hearing, Brown also offered into evidence an affidavit from his juvenile court attorney. That affidavit indicated that the State had dismissed count two of the original juvenile court petition filed in September 2017, which had alleged that Brown had been in possession of cash utilized in selling drugs, so that the State could strengthen its argument at the hearing on Brown's motion to transfer the current case to juvenile court.

After the hearing, the district court entered an order denying Brown's motion to transfer the case to juvenile court. The district court found that "a sound basis does exist for this court to maintain jurisdiction over this case." Specifically, the court found that at the time of the hearing, Brown was almost 18 years old and would only have "a mere 14 months" before he turned 19 and the juvenile court lost jurisdiction over him. The court stated: "It is clear to the court that the length of time the juvenile court would have to work with the defendant is likely woefully too short." In making this statement, the court considered that while Brown had "minimal" contact with police prior to 2017, in the months prior to the hearing, Brown had been contacted numerous times by police. On one occasion he was found to be in possession of a stolen handgun. The court also considered that there was credible evidence that Brown was a member of a street gang and was being charged with a serious offense. The district court noted that "this court would have available to it all of the options that the juvenile court has as well as the time necessary to implement and refine those options."

Brown filed a motion asking the district court to reconsider its decision to deny his motion to transfer. The court overruled the motion and Brown appealed to this court.

## ASSIGNMENT OF ERROR

On appeal, Brown contends that the district court abused its discretion in denying his motion to transfer his case to juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older

and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, the allegation contained in the Information filed against Brown put him within this category of juvenile offenders. Brown was 17 years old at the time of the offense, and the charge of delivering, manufacturing, or possessing with intent to deliver marijuana is a Class IIA felony.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to § 29-1816(3).

We note that a large portion of Brown's brief on appeal appears to be challenging the State's decision to file this case in the district court rather than in juvenile court. While Brown concedes that pursuant to the statutory language of § 43-246.01(3), the State could have filed the current charge in either juvenile court or district court, he contends that the State acted in bad faith when it filed an information in the district court while there were charges still pending in the juvenile court. Brown takes particular issue with the State's decision to dismiss count one of the pending juvenile court petition which had alleged that Brown had possessed with intent to deliver marijuana in July 2017, only a few days after the State filed the current charge against him in district court. Additionally, he questions the State's decision to ultimately dismiss count two of the pending juvenile court petition in order to gain a tactical advantage at the hearing on Brown's motion to transfer. Essentially, Brown asserts that the State did not have a basis to decide in November 2017 that Brown should be charged in district court rather than in juvenile court.

We find Brown's assertions to be without merit. One of the key aspects of prosecutorial discretion is the charging function, the power to determine what, if any, charges should be brought against a person accused of committing a crime. See *Polikov v. Neth*, 270 Neb. 29, 699 N.W.2d 802 (2005). As a result of the charging function, the prosecutor has the discretion to choose to charge any crime that probable cause will support or, if the prosecutor chooses, not to charge the accused at all. *Id*. Under § 43-246.01(3), the State is granted implicit authority to determine whether to file charges in juvenile court or in district court when the courts have concurrent jurisdiction. See also *In re Interest of Tyrone K.*, 295 Neb. 193, 887 N.W.2d 489 (2016). We note that the State is required to consider a list of factors delineated in Neb. Rev. Stat. § 43-276 (Reissue 2016) in making its decision. However, the factors are the same factors the district court is to consider when determining whether to transfer the case to the juvenile court. As such, even if the State acted in bad faith in deciding to charge a juvenile offender in district court rather than in juvenile court, such decision can be corrected by filing a motion to transfer the case.

The State ultimately determined to file the current charge against Brown in district court. It exercised its discretion in filing the charge in district court and dismissing a similar charge pending in juvenile court. Our record does not indicate the State's precise reasons for making this decision, but ultimately, it is the State's decision to make.

Having concluded that the State properly exercised its discretion to file this case in district court, we now consider the merits of the district court's decision to deny Brown's motion to transfer the case to juvenile court. The district court conducted a hearing on Brown's motion

pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

>(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

Brown argues that because his offense did not involve violence and because there is "no public safety issue here," the case should have been transferred to the juvenile court. Brief for appellant at 20. In addition, Brown argues that his prior involvement with the juvenile court concerned only allegations of truancy, and not serious criminal offenses.

Our record reflects that in the months leading up to Brown's arrest in November 2017, he had repeated contacts with law enforcement. During these contacts, officers found drugs and large amounts of cash on Brown's person and within his direct vicinity. During one contact in May, officers located a stolen handgun in Brown's backpack. Also present in the backpack was a significant amount of ammunition. Officer Hubka testified that Brown is currently a member of a street gang. This testimony is supported by the numerous pictures and videos uploaded to Brown's

Snapchat account. Such evidence suggests that Brown is an active member of a street gang who is currently dealing drugs on a regular basis.

While we agree with the district court's finding that Brown had minimal contacts with law enforcement prior to May 2017, his previous involvement with the juvenile court is concerning. While under the jurisdiction of the juvenile court, Brown failed to successfully complete a period of probation. In addition, he failed to alter his behavior as a result of the juvenile court's intervention. Brown was cited for truancy during the 2012-13 school year. He did complete a diversion program, however, he was again cited for truancy during the 2014-15 school year. Martinez testified that she does not believe that Brown takes the orders of the juvenile court seriously. Based upon our review of the evidence, we agree.

We also agree with the district court's finding that the period of time before Brown turns 19 years old and the juvenile court would lose jurisdiction over him is "likely woefully too short" to fully address the issues which have resulted in the current charge. While Brown argues in his brief on appeal that the juvenile court could immediately start addressing these issues if the case were transferred because of his previous adjudication for unlawfully possessing a handgun, we cannot say that even if this was true, that the time remaining before Brown's 19th birthday is sufficient. Moreover, we note that pursuant to Neb. Rev. Stat. § 29-2204.02 (Reissue 2016), the district court can implement a disposition for Brown under the juvenile code even if the case is not transferred to juvenile court. Section 29-2204.02 provides:

> (6) If the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

So, as the district court stated in its order denying the motion to transfer, it has available to it all of the options that the juvenile court has as well as the time necessary to implement and refine those options.

When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to the juvenile court. See *State v. Goodwin,* 278 Neb. 945, 774 N.W.2d 733 (2009). Because there is ample evidence to support each of the findings which led the district court to deny Brown's motion to transfer, we cannot and do not conclude that it abused its discretion.

## CONCLUSION

For the reasons stated in this opinion, we conclude that the district court did not abuse its discretion in denying Brown's motion to transfer his case to juvenile court.

AFFIRMED.