IN RE PETITION OF NEBRASKA COMMUNITY CORRECTIONS COUNCIL
TO ADOPT VOLUNTARY SENTENCING GUIDELINES
FOR FELONY DRUG OFFENSES.
738 N.W.2d 850

Filed August 31, 2007.   No. S-36-070001.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The Legislature has mandated by statute that we promulgate by court rule sentencing guidelines for certain offenses.[1] Under the guidelines, courts must consider community correctional programs and facilities in sentencing offenders. In February 2007, the legislatively created Community Corrections Council petitioned this court to adopt its proposed guidelines. We invited the public to comment on the proposed guidelines. Several members of the judiciary raised concerns related to separation of powers. We conducted a hearing in April.

We agree that the Legislature's mandate violates the Nebraska Constitution's separation of powers clause.[2] We deny the Community Corrections Council's petition, because we conclude that the Legislature cannot delegate to the judicial branch its constitutional power to enact the laws of this state.

OVERVIEW OF THE CREATION UNDER L.B. 46
OF COMMUNITY CORRECTIONS COUNCIL
AND SENTENCING GUIDELINES

In 2001, the Governor convened the Community Corrections Working Group. The group worked within the Nebraska Commission on Law Enforcement and Criminal Justice. The group's goal was to address Nebraska's rising prison costs by (1) developing less expensive community-based correctional options for nonviolent offenders and (2) reducing the State's

[1] Neb. Rev. Stat. § 47-630 (Reissue 2004 & Cum. Supp. 2006).

[2] Neb. Const. art. II, § 1.

reliance on incarceration for these offenders.[3] In passing 2003 Neb. Laws, L.B. 46, the Legislature adopted many of the group's proposals.[4]

At the committee hearing, the introducer of L.B. 46 stated that the goal was "to limit the use of incarceration" and "to prevent Nebraska's correctional system from bankrupting the state of Nebraska."[5] He explained that the budget for the Department of Correctional Services had increased 100 percent from fiscal year 1996-97 to fiscal year 2002-03. He projected that even with completion of a new correctional facility in 2001, the prison population would reach 153 percent of design capacity by 2005.[6]

In passing L.B. 46, the Legislature enhanced treatment programs for substance abuse offenders and required participants in both probation and non-probation-based programs to pay fees toward the costs of services.[7] Also, as part of L.B. 46, the Legislature enacted the Community Corrections Act.[8] The act establishes community-based correctional alternatives for some offenders. The Legislature specifically intended to

> [p]rovide for the development and establishment of community-based facilities and programs in Nebraska for adult offenders and encourage the use of such facilities and programs by sentencing courts and the Board of Parole as alternatives to incarceration or reincarceration, in order to reduce prison overcrowding and enhance offender supervision in the community.[9]

---

[3] Legislative Research Division, A Review: Ninety-Eighth Legislature, First Session (2003).

[4] See Statement of Intent, Judiciary Committee, 98th Leg., 1st Sess. (Feb. 13, 2003).

[5] Judiciary Committee Hearing, 98th Leg., 1st Sess. 24, 26 (Feb. 13, 2003).

[6] *Id.*

[7] See Neb. Rev. Stat. §§ 29-2252(14), 29-2262.06, and 29-2266 (Cum. Supp. 2006). See, also, Neb. Rev. Stat. § 29-2246 (Cum. Supp. 2006).

[8] See Neb. Rev. Stat. §§ 47-619 to 47-634 (Reissue 2004).

[9] § 47-620(1).

To carry out the program, the act created the Community Corrections Council (hereinafter the Council).[10] The Council's duties include (1) developing a statewide plan for community correctional facilities and programs,[11] (2) developing eligibility standards for probationers and parolees in community facilities and programs,[12] and (3) recommending sentencing guidelines for adoption by this court.[13]

In addition to mandating that the Council develop sentencing guidelines, the Legislature also mandated that we adopt sentencing guidelines: "In order to facilitate the purposes of the Community Corrections Act, the Supreme Court shall by court rule adopt guidelines for sentencing of persons convicted of certain crimes."[14]

Also, § 47-630(4) provides that "[t]he Council shall develop and periodically review the guidelines and, when appropriate, recommend amendments to the guidelines." Obviously, this means the Council would periodically recommend that we adopt amendments to the guidelines.

In February 2007, the Council filed a petition with this court requesting that we adopt and implement by court rule its "voluntary sentencing guidelines for felony drug offenses." The Council also asked that we develop, in coordination with the Council, protocols and curriculum for training judges, probation officers, county attorneys, and defense counsel.

## COMPOSITION OF SENTENCING GUIDELINES

As its title shows, the Council's proposed sentencing guidelines apply only to the sentencing of felony drug offenders. Woven into the guidelines' fabric is a matrix of sentencing ranges, in months, which ranges fall within the statutory minimum and maximum sentences for an offense. A sentencing judge would select a sentencing range by finding the intersection

---

[10]  § 47-622.

[11]  See § 47-624(14).

[12]  § 47-624(6).

[13]  § 47-624(4).

[14]  § 47-630(1).

of coordinate points on horizontal and vertical axes. Points on the horizontal axis of the matrix represent criminal history categories, and points on the vertical axis represent crime severity levels. In addition, the matrix is color coded into three recommended types of sentences.

From this mosaic, the Council recommends that a judge sentence a defendant to a prison term if the defendant's plotted sentence falls within the matrix's yellow, or upper, section. It recommends that a judge sentence a defendant to probation if the plotted sentence range falls within the matrix's light blue, or lower, section. Finally, defendants whose plotted sentence ranges fall within the dark blue, or intermediate, section are eligible for community-based correction alternatives. A judge may divert these defendants from prison.

## HEARING ON THE COUNCIL'S PETITION TO ADOPT ITS SENTENCING GUIDELINES

In April 2007, we heard argument on the Council's petition. The chairman, Kermit Brashear, spoke for the Council. He stated that in June 2006, the prison population had reached the emergency level—140 percent of capacity[15]—and was currently around 139 percent of capacity. He further stated that if action were not taken, another prison would have to be built. Brashear also reported that in a 6-year period, the budget for the Department of Correctional Services had doubled from $60 million to $120 million, and that it would double again at a time when the State was facing declining revenues.

He stated that the Council had targeted nonviolent felony drug offenders in its initial guidelines because these offenders make up 27 percent of the maximum-security prison population. The Council believed many offenders could be diverted into alternative correction programs.

Finally, Brashear stated that treatment within prisons is the least effective but most costly way of dealing with drug offenders and reducing their recidivism. He reported that incarceration costs $30,000 per year for each offender, while substance abuse

---

[15] See Correctional System Overcrowding Emergency Act, Neb. Rev. Stat. §§ 83-960 to 83-963 (Cum. Supp. 2006).

supervision programs cost about $3,000 per year and are more effective in reducing recidivism.

## OVERVIEW OF THE SEPARATION
## OF POWERS CLAUSE

Nebraska's separation of powers clause[16] prohibits the three governmental branches from exercising the duties and prerogatives of another branch.[17] It also prohibits a branch from improperly delegating its own duties and prerogatives—except as the constitution directs or permits.[18] Our constitution, unlike the federal Constitution and those of several other states, contains an express separation of powers clause. So we have been less willing to find overlapping responsibilities among the three branches of government.[19]

Deciding whether the Nebraska Constitution has committed a matter to another governmental branch, or whether the branch has exceeded its authority, is a delicate exercise in constitutional interpretation.[20] And it is our responsibility, as the ultimate interpreter of our constitution, to make that decision.[21]

As we know, the line between what is a legislative function and what is a judicial one has not been drawn with precision; we make that decision on a case-by-case basis.[22] In defining that line, we look at the function's purpose—not merely its statutory origin—to decide whether a governmental function is legislative or judicial.[23]

---

[16] Neb. Const. art. II, § 1.

[17] See, *Nebraska Coalition for Ed. Equity v. Heineman*, 273 Neb. 531, 731 N.W.2d 164 (2007); *Polikov v. Neth*, 270 Neb. 29, 699 N.W.2d 802 (2005).

[18] *Polikov v. Neth, supra* note 17.

[19] *Id.*

[20] *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 17, citing *Baker v. Carr*, 369 U.S. 186, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962).

[21] See, *State ex rel. Johnson v. Gale*, 273 Neb. 889, 734 N.W.2d 290 (2007); *Nebraska Coalition for Ed. Equity v. Heineman, supra* note 17.

[22] *State v. Stratton*, 220 Neb. 854, 374 N.W.2d 31 (1985); *Lux v. Mental Health Board of Polk County*, 202 Neb. 106, 274 N.W.2d 141 (1979).

[23] See *Lux v. Mental Health Board of Polk County, supra* note 22.

## Powers of the Legislative Branch

As imprecise as the line between the branches may sometimes be, logic and case law dictate that it is the Legislature's function through the enactment of statutes to declare the law and public policy and to define crimes and punishments.[24] In defining crimes and punishments, it sets the broad policy goals of this state's criminal justice system, including whether, for a particular type of crime, the corrective goal should be retribution, deterrence, or rehabilitation.[25]

In setting out the Legislature's powers to define crimes and punishments, we have stated:

[T]he Legislature has the authority to fix the penalty range which can be imposed for the crimes it has defined. The Legislature determines the nature of the penalty imposed, and so long as that determination is consistent with the Constitution, it will not be disturbed by the courts on review. In this regard, in *State v. Tucker*,[26] we observed: "'The legislature is clothed with the power of defining crimes and misdemeanors and fixing their punishment; and its discretion in this respect, exercised within constitutional limits, is not subject to review by the courts.'"[27]

We have [also] stated: "The range of the penalty for any offense is a matter for legislative determination. The court exercises its discretion as to the penalty to be applied under any particular state of facts within the range provided by the law."[28] Thus, once the Legislature has defined the crime and the corresponding punishment for a violation of the crime, the responsibility of the judicial branch is to apply those punishments according to the nature and range established by the Legislature.[29]

---

[24] *Stewart v. Bennett*, 273 Neb. 17, 727 N.W.2d 424 (2007).

[25] *Id.*

[26] *State v. Tucker*, 183 Neb. 577, 579, 162 N.W.2d 774, 776 (1968), quoting *State ex rel. Nelson v. Smith*, 114 Neb. 653, 209 N.W. 328 (1926).

[27] See *State v. Tatreau*, 176 Neb. 381, 126 N.W.2d 157 (1964).

[28] *Id.* at 392, 126 N.W.2d at 163.

[29] *State v. Divis*, 256 Neb. 328, 333-34, 589 N.W.2d 537, 541 (1999).

In short, the Legislature defines crimes and establishes the range of penalties.

## Powers of the Judicial Branch

This court's primary duty is the proper and efficient administration of justice.[30] Although this court's decisions establish substantive rules of law, those rules have developed in resolving parties' disputes in real cases and controversies. We have often held that an actual case or controversy must exist before a court can exercise judicial power.[31] We do not have power to *enact* substantive laws of general applicability, because that power is exclusively reserved to the Legislature. In criminal law, substantive laws are those that declare what acts are crimes or prescribe the corresponding punishment.[32]

This court also has inherent judicial power to do whatever is reasonably necessary for the proper administration of justice,[33] and this includes supervisory power over the courts.[34] But the Council's petition does not call on us to exercise our supervisory powers. For example, it has not asked us to collect statistical data on sentencing to decide whether sentencing disparity exists.

Finally, under the Nebraska Constitution, we have independent procedural rulemaking power.[35] We believe, however, that by adopting the guidelines, we would be establishing the presumptive sentencing ranges that courts must consider. The proposed guidelines, therefore, are not procedural rules.

---

[30] *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

[31] See, e.g., *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006).

[32] See, *Barnes v. Scott*, 201 F.3d 1292 (10th Cir. 2000); *Smith v. State*, 537 So. 2d 982 (Fla. 1989). See, also, *Miller v. Florida*, 482 U.S. 423, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987); *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003).

[33] *In re Estate of Reed*, 267 Neb. 121, 672 N.W.2d 416 (2003); *State v. Joubert, supra* note 30.

[34] See, *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004); *Wassung v. Wassung*, 136 Neb. 440, 286 N.W. 340 (1939).

[35] See Neb. Const. art. V, § 25.

## SENTENCING GUIDELINES
## ARE SUBSTANTIVE LAW

The Council's comments to the guidelines state that sentences within the matrix are "'voluntary.'" It is true that the guidelines' enforcement mechanisms support an argument that the guidelines are voluntary: a sentence could not be reversed on appeal solely because of a judge's departure from a recommended range. Nevertheless, the guidelines set forth the preferred sentencing policy and, in fact, discourage departure. Section 47-630(2) provides: "The guidelines shall specify appropriate sentences for the designated offenders in consideration of factors set forth by rule. The Supreme Court may provide that a sentence in accordance with the guidelines constitutes a rebuttable presumption."

We interpret § 47-630(2) to mean that the Legislature intended this court's adoption of the guidelines to represent the presumptively appropriate sentences. Further, while the guidelines are not binding, § 47-630(1) compels a judge to consider them: "The guidelines *shall provide that courts are to consider* community correctional programs and facilities in sentencing designated offenders, with the goal of reducing dependence on incarceration as a sentencing option for nonviolent offenders." (Emphasis supplied.) Finally, the guidelines would require judges to explain in a written report their reasons for departing from the recommended sentencing guidelines range. In rejecting a similar legislative mandate to adopt sentencing guidelines, the Wisconsin Supreme Court observed:

> The very requirement of explaining "departure" from the guidelines creates a presumption that a sentence within the range set forth in the matrix for the particular offense/ offender categories is appropriate, for it places the burden of showing the appropriateness of a sentence outside the matrix range on the sentencing judge. This, we believe, amounts to our prescribing "appropriate" types and lengths of sentences and constitutes unwarranted intrusion in the sentencing discretion and authority of the trial judge.[36]

---

[36] *In re Felony Sentencing Guidelines,* 113 Wis. 2d 689, 697-98, 335 N.W.2d 868, 872-73 (1983).

We agree. Despite its "voluntary" label, requiring judges to explain their "departures" gives the guidelines a presumptive status. We do not believe we should promulgate rules that would effectively curb and conflict with the sentencing discretion a court currently has under Neb. Rev. Stat. § 29-2204 (Cum. Supp. 2006).

The Council, of course, views the matter differently. It points to the state court rules regarding sentencing guidelines in Delaware and Kansas. We note, however, that while the Kansas courts may have participated in developing Kansas' sentencing guidelines, the Kansas Legislature has statutorily enacted the guidelines and their presumptive status.[37]

It is true that the Delaware Supreme Court, through an administrative directive, has adopted presumptive sentencing guidelines as recommended by the state's sentencing commission.[38] The Delaware sentencing guidelines are found neither in the court's rules nor in the state's statutes or administrative code. Instead, they are produced by the state's sentencing commission in a publication called the "Benchbook."[39] Our research, however, has failed to find any decision by the Delaware Supreme Court upholding its adoption of presumptive sentencing ranges against a separation of powers challenge. Because of our constitution's structure, we decline to follow Delaware's model.

More on point, we note that in 1983, the Florida Supreme Court also promulgated sentencing guidelines by court rule in response to a legislative mandate. But, in 1989, the court determined that its rules violated the state constitution's separation of powers clause.[40]

---

[37] See Kan. Stat. Ann. §§ 21-4701 to 21-4728 (1995 & Cum. Supp. 2006).

[38] See *Siple v. State*, 701 A.2d 79 (Del. 1997).

[39] Delaware Sentencing Accountability Comm., Benchbook (2006), http://cjc.delaware.gov/PDF/FinalBB2006.pdf. See, e.g., *Teti v. State*, No. 500,2005, 2006 WL 1788351 (Del. June 28, 2006) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 905 A.2d 747 (Del. 2006)).

[40] *Smith v. State, supra* note 32.

Similarly, the Michigan Supreme Court had promulgated presumptive sentencing guidelines by administrative order beginning in 1984. But,

> [t]he Michigan Supreme Court's guidelines and legislative system of disciplinary credits [were] criticized for several reasons, such as excessive leniency, inadequate punishment, and undue harshness. As a result, a systematic statutory sentencing structure was developed and enacted into law to replace the judicially-imposed sentencing guidelines [in] 1999 . . . .[41]

This criticism of judicially imposed sentencing guidelines emphasizes the difficult position in which a court places itself when it specifically prescribes sentencing policy outside a pending case. We would compromise our neutrality, in perception if not in fact, if we promulgated the very law that could be challenged. The attraction of delegating potentially controversial legislation to the judiciary is perhaps understandable. But by complying with the Legislature's mandate, we would undermine the separation of powers doctrine:

> The purpose of the doctrine . . . is to preserve the independence of each of the three branches of government in their own respective and proper spheres, thus tending to prevent the despotism of an oligarchy of the Legislature or judges, or the dictatorship of the executive, or any cooperative combination of the foregoing. In the words of Justice Brandeis, "[The purpose was] not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy."[42]

In addressing a separation of powers issue regarding pretrial diversion, we specifically held that the power to design formal

---

[41] Miriam A. Cavanaugh, Note, *If You Do the Crime, You WILL Do the Time: A Look at the New "Truth in Sentencing" Law in Michigan*, 77 U. Det. Mercy L. Rev. 375, 386 (2000) (citing legislative analysis).

[42] *Prendergast v. Nelson*, 199 Neb. 97, 124-25, 256 N.W.2d 657, 673 (1977) (Clinton, J., concurring in part, and in part dissenting), quoting *Myers v. United States*, 272 U.S. 52, 47 S. Ct. 21, 71 L. Ed. 160 (1926).

pretrial diversion programs is a legislative power.[43] We reasoned that the adoption of formal pretrial diversion programs represents a shift in focus from deterrence and retribution to rehabilitation.[44] That same reasoning applies to sentencing schemes that result in many offenders avoiding incarceration.

Even more to the point, the Legislature may not implement sentencing policy through delegation that is contrary to its current policy under § 29-2204. Section 29-2204 broadly sets forth a policy of indeterminative sentencing with no presumptive sentencing ranges.

We commend the Legislature's efforts to enact safe and effective means of treating substance abuse in the community and to address the rising costs of state correctional facilities. To the extent that substance abuse offenders have increased the prison population, we have cooperated with the Legislature's statutory mandate that we promulgate procedural rules for drug courts after the Legislature created these courts.[45] But the Legislature has not asked this court to promulgate procedural rules to govern court administration of a program enacted by the Legislature. Instead, it has asked us to promulgate substantive rules regarding sentencing that would carry out a sea change in sentencing policy.

Unquestionably, imposing sentencing guidelines presents challenging issues of public policy. We have repeatedly held that the Legislature cannot statutorily confer upon the courts the duties of other branches.[46] These public policy decisions should be debated in the proper forum—the Legislature. We reject the

---

[43] *Polikov v. Neth, supra* note 17.

[44] *Id.*

[45] See, Neb. Rev. Stat. §§ 24-1301 to 24-1302 (Cum. Supp. 2006); Nebraska Supreme Court Rule Governing Establishment and Operation of Drug Courts (adopted June 17, 2007).

[46] See, e.g., *State v. Bainbridge*, 249 Neb. 260, 543 N.W.2d 154 (1996); *State v. Jones*, 248 Neb. 117, 532 N.W.2d 293 (1995); *Williams v. County of Buffalo*, 181 Neb. 233, 147 N.W.2d 776 (1967); *Searle v. Yensen*, 118 Neb. 835, 226 N.W. 464 (1929); *State v. Neble*, 82 Neb. 267, 117 N.W. 723 (1908).

Council's petition because the Legislature may not delegate its lawmaking function to the executive or judicial branches.[47]

PETITION DENIED.

[47] See *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994).