Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/28/2017 09:10 AM CDT

State of Nebraska ex rel. Les W. Veskrna, M.D.,
appellee and cross-appellant, v. Corey R. Steel,
State Court Administrator, appellant
and cross-appellee.

___ N.W.2d ___

Filed May 5, 2017.    No. S-16-118.

1. **Mandamus: Words and Phrases.** Mandamus is a law action, and it is an extraordinary remedy, not a writ of right.
2. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.
3. **Mandamus.** Whether to grant a writ of mandamus is within the trial court's discretion.
4. **Courts: Constitutional Law: Judgments: Appeal and Error.** Regarding the judicial deliberative process privilege, an appellate court reviews de novo a district court's conclusions of law and reviews for clear error the district court's findings of fact.
5. **Constitutional Law: Records.** The public records statutes do not trump the constitutional imperative that one branch of government may not unduly interfere with the ability of another branch to perform its essential functions.
6. **Constitutional Law.** The powers of the three departments of government are derived from express grants in the Constitution and from the inherent right to accomplish all objects naturally within the orbit of each department, not expressly limited by the existence of a similar power elsewhere or express limitations in the Constitution.
7. **Courts: Constitutional Law.** By creating and regulating Judicial Branch Education, the Nebraska Supreme Court exercises a power constitutionally committed to it.
8. **Legislature: Constitutional Law: Statutes: Public Policy.** The Legislature exercises a power constitutionally committed to it by enacting statutes to declare what is the law and public policy.

9. **Legislature: Statutes: Intent: Records.** In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.

10. **Constitutional Law.** The constitutional principle of separation of powers demands that in the course of any overlapping exercise of the three branches' powers, no branch may significantly impair the ability of any other in its performance of its essential functions.

11. ____. An analysis of the overlapping exercise of constitutionally delegated powers focuses on the extent to which one branch is prevented from accomplishing its constitutionally assigned functions, balanced against the other branch's need to promote the objectives within its constitutional authority.

12. **Constitutional Law: Courts: Legislature: Statutes.** It is for the judiciary to say when the Legislature has gone beyond its constitutional powers by enacting a law that invades the province of the judiciary.

13. **Constitutional Law: Records.** The extent that legislatively mandated disclosure of another branch's records impairs that branch's constitutionally assigned functions depends on both the importance of the underlying activity and the consequences to that activity of disclosing the particular records requested.

14. **Constitutional Law: Judges.** The proper constitutional balance requires a narrowly tailored, albeit absolute, judicial deliberations privilege.

15. **Constitutional Law: Courts: Judges: Records.** Whether preservation of the essential functions of the judicial branch requires the confidentiality of Judicial Branch Education records is to be determined on a case-by-case basis in accordance with existing rules promulgated by the Nebraska Supreme Court, the judicial deliberations privilege, and state constitutional principles respecting the proper balance between the coordinate branches.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Douglas J. Peterson, Attorney General, David A. Lopez, L. Jay Bartel, and Leslie S. Donley for appellant.

L. Steven Grasz and Kamron T. Hasan, of Husch Blackwell, L.L.P., for appellee.

Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Eugene Volokh, of Scott & Cyan

Banister Amicus Brief Clinic, UCLA School of Law, for amicus curiae Media of Nebraska, Inc.

Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ., and Riedmann, Judge.

Per Curiam.

## I. NATURE OF CASE

Corey R. Steel, the State Court Administrator, appeals from a writ of mandamus ordering the disclosure, pursuant to Nebraska's public records statutes, of Judicial Branch Education (JBE) records.[1] Steel argues that the unwritten policy of the JBE advisory committee (Committee) is that all JBE records are confidential and that such policy falls under the exception to the "public records" definition, which is allowed "when any other statute expressly provides that particular information or records shall not be made public."[2] Alternatively, Steel relies on the concepts of separation of powers and the judicial deliberative privilege. He asserts that it is for the Committee, not the Legislature, to determine what JBE records are appropriate for public disclosure and that the judiciary's essential functions require the confidentiality of JBE records. We affirm.

## II. BACKGROUND

### 1. Complaint

Les W. Veskrna filed a complaint for a writ of mandamus requiring Steel, in his capacity as State Court Administrator, to provide copies or allow inspection of continuing education records for the court since July 1, 2012, pertaining to child custody and parenting time. Veskrna alleged that such records are not protected by any privilege derived from the court's inherent powers or otherwise shielded by virtue of any other inherent constitutional power of the judicial branch and that

---

[1] See Neb. Rev. Stat. § 84-712.03(1)(a) (Reissue 2014).

[2] Neb. Rev. Stat. § 84-712.01(1) (Reissue 2014).

public access to JBE records does not infringe on any power essential to the existence, dignity, and functions of the court.

## 2. Request and Response

Attached to the complaint was Veskrna's email to Steel requesting:

> all records in any form, including PowerPoint presentations, handouts, notes, video and audio recordings, correspondence, memoranda, email and other communications, regarding judicial education programs since July 1, 2012 on child custody and parenting time. This request includes records, including email and other communications, regarding the selection of presenters, how those presenters were selected, contracts with presenters and other outside parties, and all training materials.

Veskrna also attached the email response from Steel denying the request:

> The Nebraska Supreme Court established [JBE] and adopted rules governing such education, Neb. Ct. R. §§ 1-501 et seq., pursuant to its administrative, supervisory and inherent authority over the state's judicial system. See, Nebraska Constitution, Article V, § 1. Internal court records pertaining to the JBE system are under the exclusive control of the judiciary. As the Nebraska Attorney General has recognized, in Neb. Op. Atty. Gen. No. 04030, every court has power over its own records and files; even if the Nebraska Public Records Act applies to certain judicial records, "the courts may possibly take the position that any obligation which they have to produce records . . . under the [Act] is subject to their supervisory power over their own records and files."
>
> Judicial education was instituted by the Supreme Court to protect the integrity of the judicial system for the benefit of the general public. Neb. Ct. R. § 1-501 expresses that intent: "It is essential to the public that judges . . . continue their education in order to maintain and increase

their professional competence, to fulfill their obligations under the Nebraska Revised Code of Judicial Conduct, and to ensure the delivery of quality judicial services to the people of the State of Nebraska."

Additionally, judicial education is closely intertwined with the deliberative and decision-making process employed by a judge in fulfilling his or her duty to independently decide legal cases. The independence of the judiciary, which is crucial to maintaining the public's trust, is strengthened by the protection of deliberations between judges and those who assist the judge in the analysis of legal issues, including staff and educators who enhance a judge's knowledge base. For these reasons, administrative records associated with judicial branch education are not public records subject to release under the Nebraska Public Record[s] Act.

### 3. Steel's Answer to Complaint

In his answer to Veskrna's complaint, Steel denied that the "Nebraska Public Records Act" was "'on its face'" applicable to the judicial branch. Steel also denied Veskrna's allegation that JBE records are not protected by any privilege derived from the court's inherent powers or otherwise shielded by virtue of any other inherent constitutional power of the judicial branch. He denied the allegation that public access to JBE records does not infringe on any power essential to the existence, dignity, and functions of the court. Steel asserted that records pertaining to judicial education were not "'public records'" as defined by § 84-712.01. Steel generally alleged that Veskrna did not have a clear right to receive records pertaining to judicial education and that Steel had no corresponding clear duty to produce such records.

### 4. Summary Judgment

Veskrna and Steel filed cross-motions for summary judgment. At the hearing on the motions, Veskrna clarified that he did not request records of the judges' attendance at the JBE

programs, nor their ratings of the presenters. Veskrna wished to have access only to what seminars were presented, who the presenters were, and what materials were presented.

### (a) Veskrna's Arguments

Veskrna asserted that the requested JBE records fell under "public records" as defined by the public records statutes and that no statutory exception applied. Section 84-712.01(1) defines public records in part:

> Except when any other statute expressly provides that particular information or records shall not be made public, public records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing.

Veskrna pointed out that the public records statutes facially apply to the judicial branch and that these statutes have been recognized as applicable to the judicial branch in Nebraska case law.

Veskrna asserted that the JBE records requested were not privileged under the deliberative process privilege but did concede that the judiciary can withhold documents under the deliberative process privilege. He asserted that although this court has inherent powers under article V, § 1, of the Nebraska Constitution, including the inherent power to restrict public access to certain records, records which are administrative in nature cannot be withheld. Veskrna argued that while "chambers records" and "case records" might traditionally be protected from access, "administrative records" are not.[3] And, Veskrna asserted that allowing public access to JBE records does not unduly encroach upon the judiciary's core functions, noting that mandatory judicial education was

---

[3] Brief for appellee at 36.

only recently adopted in 2004. Finally, Veskrna argued that the open courts provision of the Nebraska Bill of Rights supported disclosure.

(b) Steel's Arguments

Steel argued that the Committee's informal policy and practice that all JBE records be kept confidential falls under the exception of § 84-712.01(1). Steel argued that JBE records fell under the exception to the definition of public records, because such confidentiality is "authorized" by Neb. Rev. Stat. § 24-205.01 (Reissue 2016) and Neb. Ct. R. § 1-512(A) (rev. 2013).

Section 24-205.01(2)(a) states that the Committee may "[d]evelop for review by the Supreme Court standards and rules and regulations addressing such issues as the criteria for mandatory education for judges, criteria for approval of qualified activities, reporting requirements, sanctions for noncompliance, exemptions, and confidentiality of records." Steel contends the language "confidentiality of records" is an express recognition by the Legislature that this court may deem JBE records confidential. Section 24-205.01(2)(b) states that the Committee may "[d]evelop for review by the Supreme Court standards and policies for education and training of all nonjudge judicial branch employees, including criteria for approval of qualified activities, reporting requirements, sanctions for noncompliance, and exemptions."

Section 1-512(A) states that the advisory committee shall have authority to "[d]evelop and review standards and administrative rules addressing such issues as the criteria for mandatory education for judges, criteria for approval of qualified activities, reporting requirements, sanctions for noncompliance, exemptions, and confidentiality of records for approval of the Court and incorporation into this rule." Steel did not claim that the Committee had, in fact, developed such rules. And Steel acknowledged that our court has not yet adopted rules governing the confidentiality of JBE records.

Steel also argued that given separation of powers principles, the Legislature cannot intrude upon the Nebraska Supreme Court's express and inherent powers that are being exercised in its control over public access to JBE records. In this regard, Steel cited to article II, § 1, and article V, § 1, of the Nebraska Constitution. Neb. Const. art. II, § 1(1), states:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive, and judicial, and no person or collection of persons being one of these departments shall exercise any power properly belonging to either of the others except as expressly directed or permitted in this Constitution.

Neb. Const. art. V, § 1, provides:

> The judicial power of the state shall be vested in a Supreme Court, an appellate court, district courts, county courts, in and for each county, with one or more judges for each county or with one judge for two or more counties, as the Legislature shall provide, and such other courts inferior to the Supreme Court as may be created by law. In accordance with rules established by the Supreme Court and not in conflict with other provisions of this Constitution and laws governing such matters, general administrative authority over all courts in this state shall be vested in the Supreme Court and shall be exercised by the Chief Justice. The Chief Justice shall be the executive head of the courts and may appoint an administrative director thereof.

Steel maintained that the Nebraska Supreme Court has inherent powers to determine its eternal essential operations without interference and that this inherent power includes rulemaking relative to its essential functions, which Steel asserted necessarily includes the power to limit public access to those records. Steel asserted that the express administrative power and inherent judicial power to establish JBE made the public records statutes inapplicable to JBE records.

Steel also asserted that the JBE records were protected by the judicial deliberative process privilege. Although Steel recognized that this privilege is generally associated with judicial deliberations in a particular case, Steel contended that it should extend to JBE records, because judicial education is closely intertwined with the deliberative and decisionmaking process by a judge. Steel asserted that judicial independence "is strengthened by the protection of deliberations between judges and those who assist the judge in the analysis of legal issues, including staff and educators who enhance the judge's knowledge base."

### (c) Evidence Submitted

Veskrna submitted in support of his motion for summary judgment the correspondence attached to his complaint and described above, which was admitted without objection. Steel submitted in support of his cross-motion for summary judgment two affidavits, one from Carole McMahon-Boies, who is the administrator of the JBE, and one from himself.

Veskrna objected to the affidavits. Veskrna asserted that the exhibits supported new theories that were not disclosed in Steel's initial denial letter, which exhibits Veskrna claimed were a violation of Neb. Rev. Stat. § 84-712.04(1)(a) (Reissue 2014). In addition, Veskrna objected on the grounds of foundation, hearsay, and relevance, and because they contained legal conclusions and arguments. With the exception of two sentences in McMahon-Boies' affidavit and one sentence and one paragraph in Steel's affidavit, the court overruled Veskrna's objections to the affidavits.

### (i) Affidavit of McMahon-Boies

As admitted into evidence, McMahon-Boies averred that "[i]t is the longstanding position and policy of the Committee that [JBE] records are not public records and shall, at all times, be kept confidential." McMahon-Boies further stated that attendance at educational sessions for judges is "tightly screened" and that "[n]o outside people are allowed to attend."

Access to the educational materials is likewise "tightly controlled." McMahon-Boies opined that "[j]udges exhibit a different demeanor when individuals other than judges, staff or educators participate in the educational sessions," explaining that "[j]udges are less likely to ask questions or provide commentary when they cannot be assured of complete confidentiality."

In paragraph 12 of her affidavit, McMahon-Boies expressed her belief that "the [JBE] materials at issue here are closely tied to the deliberative process that forms the basis of judicial decisions" and that "[d]isclosing the type of education provided, educators' identities, methodologies and underlying philosophies, and the specific scenarios presented and analyzed during judicial educational sessions, could provide third parties access to the inner workings of a judge's thought processes in deciding particular cases."

Finally, McMahon-Boies opined that "[r]equiring the release of the requested records would undermine the ability of the Nebraska Supreme Court to educate its judges, which in the end benefits no one."

### (ii) Affidavit of Steel

Steel stated that "[i]t is the longstanding position and policy of the Committee that [JBE] records are not public records and shall, at all times, be kept confidential."

### (d) Court's Order on Summary Judgment

As an initial matter, the court rejected Veskrna's suggestion that Steel had failed to raise the issue that the JBE records were not public records under § 84-712.01. It found that such issue was affirmatively presented in Steel's letter denying Veskrna access to the records. The court recognized that Neb. Const. art. V, § 1, provides that the Nebraska Supreme Court is vested with general administrative authority over all courts in this state and that the Nebraska Supreme Court has inherent power to establish and administer JBE, as a matter

naturally within its orbit. However, the district court noted that Nebraska case law has recognized the applicability of the public records laws to the judicial branch.[4] The court reasoned that it does not always violate separation of powers principles for the Legislature to determine what judicial records are subject to public disclosure. It also concluded that the judicial deliberative process privilege is a recognized privilege applicable to this case.

In considering the JBE records at issue, the court concluded that it could not grant summary judgment to either party, because the ultimate determination depended on a closer examination of each document. The court found it "significant" that our court has not adopted any rule concerning the confidentiality of JBE records. The district court concluded that a "tacit understanding between [Steel] and [McMahon-Boies] is not enough to allow this Court to find that all of the records requested are confidential and beyond access by the public due solely to the Court's inherent authority."

With respect to this court's authority to withhold documents based upon the deliberative privilege, the district court concluded that any records falling under such privilege could not be compelled into disclosure by the public disclosure laws. But the court could not say that all the requested documents fell under such privilege without examining them. Application of the judicial deliberative privilege required a fact-specific inquiry.

### (e) Court's Order on
### Writ of Mandamus

After examining the 12 records given to the court for in camera review, the court determined that all but one part of one document was a public record subject to disclosure under § 84-712.01. Relying upon and applying the deliberative

---

[4] See, *State ex rel. Unger v. State*, 293 Neb. 549, 878 N.W.2d 540 (2016); *State v. Ellsworth*, 61 Neb. 444, 85 N.W. 439 (1901); *State, ex rel. Griggs, v. Meeker*, 19 Neb. 106, 26 N.W. 620 (1886).

process privilege, the court concluded that an email communication from a judge to McMahon-Boies, which the court described as "commenting on a substantive area of the law" over which "the judge . . . routinely makes decisions," was privileged under the deliberative process privilege. The court ordered release of the records after a redaction of that email. However, the court ordered that all the documents—found in exhibit 4—be sealed pending review on appeal of the district court's determination. This court has unsealed the documents and has reviewed the same in camera for purposes of deciding the merits of the case.

Exhibit 4 consists of the following documents: the agenda of the 2012 fall judges meeting; a parenting plan document which identifies the objectives of the presentation; an outline of the presentation regarding parenting time; state statutes relating to the Parenting Act; emails between McMahon-Boies and a presenter concerning logistics and the presentation; an email from a district judge which was redacted; an email regarding the fall seminar for 2014 and the speaker for the fall conference; an email with a computer presentation, slides, and handouts of the presenter at the fall conference for 2014; an email regarding travel expense information; an email with a fall confirmation agenda; and past conference communications between the presenter and McMahon-Boies.

## III. ASSIGNMENTS OF ERROR

Steel assigns, summarized and restated, that the district court erred in (1) denying Steel's motion for summary judgment and issuing the writ of mandamus requested by Veskrna's complaint, (2) concluding the JBE records constitute public records as defined by § 84-712.01(1), (3) concluding the JBE records requested by Veskrna are not facially protected from disclosure under the judicial deliberative process privilege, and (4) awarding attorney fees and costs.

Veskrna cross-appealed from the court's failure to sustain his objection to the entirety of paragraph 12 of McMahon-Boies'

affidavit. He did not cross-appeal the court's ruling that the judicial deliberative process privilege applied to one document that the court redacted.

## IV. STANDARD OF REVIEW

[1-3] Mandamus is a law action, and it is an extraordinary remedy, not a writ of right.[5] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and we will not disturb those findings unless they are clearly erroneous.[6] Whether to grant a writ of mandamus is within the trial court's discretion.[7]

[4] Regarding the judicial deliberative process privilege, an appellate court reviews de novo a district court's conclusions of law and reviews for clear error the district court's findings of fact.[8]

## V. ANALYSIS

A person denied access to a public record may file for speedy relief by a writ of mandamus under § 84-712.03.[9] A party seeking a writ of mandamus under § 84-712.03 has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by § 84-712.01, and (3) the requesting party has been denied access to the public record as guaranteed by Neb. Rev. Stat. § 84-712 (Reissue 2014).[10] If the requesting party satisfies its prima facie claim for release of public

---

[5] *State ex rel. Unger v. State, supra* note 4.

[6] See *Steckelberg v. Nebraska State Patrol*, 294 Neb. 842, 885 N.W.2d 44 (2016).

[7] *State ex rel. Unger v. State, supra* note 4.

[8] See, *Moye, O'Brien, etc. v. National R.R. Passenger*, 376 F.3d 1270 (11th Cir. 2004); *Freudenthal v. Cheyenne Newspapers, Inc.*, 233 P.3d 933 (Wyo. 2010).

[9] *State ex rel. Unger v. State, supra* note 4.

[10] *Id.*

records, the public body opposing disclosure must show by clear and convincing evidence that the document sought is exempt from disclosure.

Section 84-712.01(1) broadly defines public records as including all records and documents of or belonging to any branch "[e]xcept when any other statute expressly provides that particular information or records shall not be made public . . . ." Twenty statutory exemptions to disclosure are enumerated in Neb. Rev. Stat. § 84-712.05 (Cum. Supp. 2016), and an exemption for certain records of the federal government is described in Neb. Rev. Stat. § 84-712.08 (Reissue 2014).

Steel asserts that none of the JBE records requested by Veskrna under § 84-712.03 were public records as defined by § 84-712.01, because another statute expressly provides that particular information or records shall not be made public. He does not claim that the JBE records fall under an exemption set forth by § 84-712.05 or § 84-712.08, but relies on § 24-205.01 and an unwritten Committee policy.

Steel alternatively challenges, under separation of powers, the constitutionality of the Legislature's ability to determine that JBE records are public, when the Committee has determined that they are not. He argues that the inherent authority of the court and the integrity of the judiciary require that all JBE records be confidential.

Veskrna cross-appeals. Veskrna does not challenge the court's rulings recognizing the judicial deliberative process privilege or its determination to redact the email from the records, but asserts that the court erred in entering into evidence paragraph 12 of McMahon-Boies' affidavit.

As will be explained in further detail below, we affirm the judgment of the district court. As a matter of statutory interpretation, we reject Steel's argument that exhibit 4 is excluded from the statutory definition of public records. A statute authorizing the Committee to develop for our review rules addressing the confidentiality of JBE records is not in itself a "statute expressly provid[ing] that particular information or

records shall not be made public."[11] The Committee has not yet developed for our review such rules, and we have not actually adopted any rule relating to the confidentiality of JBE records. As concerns the constitutionality of the application of the public records statutes to exhibit 4, we find that its disclosure does not unduly interfere with any essential function of the judicial branch.

### 1. Public Records as Defined by § 84-712.01

We first analyze Steel's argument that as a matter of statutory interpretation, exhibit 4 is not a public record under § 84-712.01(1). Section 84-712.01(1) states that "[e]xcept when any other statute expressly provides that particular information or records shall not be made public, public records shall include all records and documents . . . of or belonging to . . . any . . . branch . . . ." The parties do not contest or question whether the records contained in exhibit 4 are "of or belonging to" this branch. The only issue presented is whether there is a "statute expressly provid[ing] that [JBE] records shall not be made public."

Section 24-205.01(2) states that the Committee "may . . . [d]evelop for review by the Supreme Court standards and policies . . ." for education and training of all judges and nonjudge judicial branch employees and, as to education for judges, develop for review by this court standards and rules and regulations addressing the "confidentiality of records." Court rule § 1-512(A) similarly provides that the Committee has the authority to develop for approval of this court rules relating to the confidentiality of records.

Steel argues that in light of § 24-205.01, the Committee's unwritten policy of keeping all JBE records confidential qualifies under the exception set forth in § 84-712.01(1) to the definition of public records. We disagree. A statute

---

[11] See § 84-712.01(1).

acknowledging our power to adopt rules pertaining to the confidentiality of JBE records does not, standing alone, "expressly provide[]," under § 84-712.01(1) that JBE records shall not be made public.

Rather, § 24-205.01(2)(a) is a legislative recognition that this court has the authority to establish the confidentiality of such records and it leaves to the Committee the task of implementing any adopted rules regarding the confidentiality of JBE records.

An unwritten policy of the Committee to consider JBE records as confidential is not sufficient to establish the confidentiality of such records for purposes of the public records laws. There is a statute that contemplates promulgation by this court of rules regarding the confidentiality of JBE records, but no such rules have yet been adopted.

We expressly point out that this opinion does not limit the ability of this court to adopt in the future rules expressly regulating the confidentiality of JBE materials.

## 2. Separation of Powers

[5] We turn next to Steel's argument that it would violate separation of powers principles to accede to any statutory scheme that mandates the disclosure of our JBE records. We agree that whether or not we have adopted any court rules concerning the confidentiality of our JBE records, the public records statutes do not trump the constitutional imperative that one branch of government may not unduly interfere with the ability of another branch to perform its essential functions. We simply find no undue interference in disclosing the records at issue.

The question presented by Steel is whether the application of the public records statutes to the JBE records contained in exhibit 4 violates the separation of powers of the three branches of government as set forth in the Nebraska Constitution. In answering this question, we focus on the judicial deliberations privilege and on generally applicable separation of powers

principles as they pertain to the overlapping exercise of two branches' proper functions. We are not here presented with any other privilege; nor are we presented with a question of the improper delegation of a power solely vested in another branch.[12] We make no comment in this opinion on legal questions not presented that might be raised in an appropriate case concerning the application of the public records statutes to other records.

[6] The powers of the three departments of government are derived from express grants in the Constitution and from the inherent right to accomplish all objects naturally within the orbit of each department, not expressly limited by the existence of a similar power elsewhere or express limitations in the Constitution.[13] Deciding whether the Nebraska Constitution has committed a matter to another governmental branch, or whether the branch has exceeded its authority, is a "delicate exercise in constitutional interpretation."[14]

[7] By creating and regulating JBE, we are exercising a power constitutionally committed to us. Part of that exercise necessarily includes managing JBE records. Neb. Const. art. V, § 1, gives to the judiciary the general administrative authority over all courts in this state. Other state courts have recognized the responsibility of the judiciary to "manage its own house"[15] and have stated that it is the province of the judiciary to decide whether special training for a particular area of the law is appropriate.[16] This court has previously recognized the inherent judicial power to do whatever is reasonably necessary

---

[12] See *In re Petition of Nebraska Community Corr. Council*, 274 Neb. 225, 738 N.W.2d 850 (2007); *Board of Regents v. Exon*, 199 Neb. 146, 256 N.W.2d 330 (1977).

[13] See *State v. Joubert*, 246 Neb. 287, 518 N.W.2d 887 (1994).

[14] *Adams v. State*, 293 Neb. 612, 617, 879 N.W.2d 18, 22 (2016).

[15] *Attorney General v. Waldron*, 289 Md. 683, 695, 426 A.2d 929, 936 (1981).

[16] *Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 454 N.W.2d 770 (1990).

for the proper administration of justice, including supervisory power over the courts.[17]

[8,9] However, the Legislature exercises a power constitutionally committed to it by enacting statutes to declare what is the law and public policy.[18] In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government. Such expressed policy in favor of public disclosure of governmental records has been in effect since our State's founding.[19]

[10] The three branches sometimes overlap in the exercise of their constitutionally delegated powers. This overlap may sometimes result in the three departments having a limited partial agency in or control over the acts of each other.[20] But the constitutional principle of separation of powers demands that in the course of any overlapping exercise of the three branches' powers, no branch may significantly impair the ability of any other in its performance of its essential functions.[21]

[11] An analysis of the overlapping exercise of constitutionally delegated powers focuses on the extent to which one branch is prevented from accomplishing its constitutionally assigned functions, balanced against the other branch's need to promote the objectives within its constitutional

---

[17] See *In re Petition of Nebraska Community Corr. Council, supra* note 12.

[18] *Stewart v. Bennett*, 273 Neb. 17, 727 N.W.2d 424 (2007).

[19] See Rev. Stat. ch. 44, § 1, p. 297 (1866).

[20] See *Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989).

[21] See, *Wellness Intern. Network, Ltd. v. Sharif*, ___ U.S. ___, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015); *Cactus Wren v. Dept. of Bldg. & Fire Safety*, 177 Ariz. 559, 869 P.2d 1212 (Ariz. App. 1993); *Brierton v. Department of Motor Vehicles*, 140 Cal. App. 4th 427, 44 Cal. Rptr. 3d 480 (2006); *State v. Speedis*, 350 Or. 424, 256 P.3d 1061 (2011); *State ex rel. Met. Pub. Defender v. Courtney*, 335 Or. 236, 64 P.3d 1138 (2003); *Brady v. Dean*, 173 Vt. 542, 790 A.2d 428 (2001).

authority.[22] Other states, in determining the proper balance between the coordinate branches, have held that the court should consider the following factors: (1) the essential nature of the power being exercised, (2) the degree of control by one department over another, (3) the objective sought to be attained by that branch's exercise of power, and (4) the practical result of the blending of powers as shown by actual experience over a period of time.[23]

[12] It is for the judiciary to say when the Legislature has gone beyond its constitutional powers by enacting a law that invades the province of the judiciary.[24] But the judiciary should "'"proceed cautiously"'" in relying on 'inherent authority'" and must give "''due consideration for equally important executive and legislative functions.'"[25] Determining the constitutional limits of the Legislature's plenary lawmaking authority in the context of the separation of powers between the judicial function and power and the legislative one is a difficult endeavor that must proceed on a case-by-case basis.[26]

Under different facts concerning the overlapping powers of the Legislature and judiciary, we have found a balance that allows each branch to accomplish its essential functions without usurping the other. For instance, we have held that the legislative branch has the right to prescribe the admissibility of certain categories of evidence in a court of law, but

---

[22] See *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977).

[23] 16 C.J.S. *Constitutional Law* § 279 (2015). See, also, e.g., *J.W. Hancock Enterprises v. Ariz. St. Reg.*, 142 Ariz. 400, 690 P.2d 119 (Ariz. App. 1984); *State, ex rel., v. Bennett*, 219 Kan. 285, 547 P.2d 786 (1976).

[24] *U'Ren v. Bagley*, 118 Or. 77, 245 P. 1074 (1926).

[25] *State v. M.D.T.*, 831 N.W.2d 276, 282 (Minn. 2013).

[26] See *Slack Nsg. Home, Inc. v. Department of Soc. Servs.*, 247 Neb. 452, 528 N.W.2d 285 (1995), *disapproved on other grounds, Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007). See, also, e.g., *State v. Stratton*, 220 Neb. 854, 374 N.W.2d 31 (1985).

that it is solely a judicial function to determine whether the evidence is of probative value and determine the weight, if any, to be given such evidence.[27] And we have held that the Legislature, in the interest of protecting the public through the proper exercise of its police power, can pass laws prescribing the minimum requirements for admission to the bar, but it cannot interfere with the power of this court to establish by rule higher qualifications for admission of applicants as deemed necessary for the proper administration of our judicial functions.[28]

Steel argues that judicial education is "'essential'" to the integrity of our judicial system and that therefore, the absolute confidentiality of all JBE records is likewise necessarily essential to the integrity of our judicial system. We have already explained that judicial education is an important judicial function deriving from the Nebraska Constitution.

But it does not necessarily follow that all records created in the course of judicial education must be confidential to preserve this important function. We observe that we have in the past applied public records statutes to records created in the course of essential judicial acts, implicitly drawing a distinction between the importance of the underlying activity and the importance of keeping the records created during that activity confidential. As an example, in *State v. Ellsworth*,[29] we held that a writ of mandamus should have been granted compelling a judge to disclose the docket entry of his judgment.

If each branch of government could shield its records simply by appealing to the fact that they were created in the

---

[27] See, *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998); *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), *overruled on other grounds, State v. Baue*, 258 Neb. 968, 607 N.W.2d 191 (2000); *State v. Bjornsen*, 201 Neb. 709, 271 N.W.2d 839 (1978).

[28] See *State, ex rel. Ralston, v. Turner*, 141 Neb. 556, 4 N.W.2d 302 (1942).

[29] *State v. Ellsworth, supra* note 4. See, also, *State ex rel. Unger v. State, supra* note 4; *State, ex rel. Griggs, v. Meeker, supra* note 4.

course of any number of essential branch functions, the protections of the public interest embodied in the public records statutes would be a nullity. This would upset the proper balance between the three branches of government. We note with approval that the U.S. Supreme Court has rejected overly broad claims of executive privilege to shield records from similar public disclosure laws.[30] In *United States v. Nixon*,[31] the Court held that a broad, absolute privilege based on the executive branch's "undifferentiated claim of public interest in the confidentiality of such conversations" would "gravely impair the role of the courts."

We also note with approval that the Court in *Nixon* observed, "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."[32] We have always supported transparency and the search for the truth.[33] Generally speaking, the legislative and judicial branches are not at cross-purposes in supporting access to public records. We have, under common-law principles, supported public access to judicial records and documents, although we have also recognized that no right of public access is absolute.[34]

[13] We conclude that the extent that legislatively mandated disclosure of another branch's records impairs that branch's constitutionally assigned functions depends on both the importance of the underlying activity and the consequences to that activity of disclosing the particular records requested. There

---

[30] See, e.g., *Nixon v. Administrator of General Services, supra* note 22.

[31] *United States v. Nixon*, 418 U.S. 683, 706, 707, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

[32] *Id.*, 418 U.S. at 710.

[33] See, *State v. Cribbs*, 237 Neb. 947, 469 N.W.2d 108 (1991); *State v. Ross*, 186 Neb. 280, 183 N.W.2d 229 (1971).

[34] See *State v. Cribbs, supra* note 33. See, also, *United States v. Nixon, supra* note 31.

must be a consideration of the practical result of disclosure rather than simply the general importance of the forum in which the records were created.

While we agree with Steel that separation of powers would be violated by legislatively mandated disclosure of documents falling under the judicial deliberations privilege, we find the privilege inapplicable to the documents contained in exhibit 4. The judicial deliberations privilege is a privilege that "protects the deliberative processes of a judge from intrusion."[35] The privilege has never before been formally adopted by our court, but has unquestionably firm roots in our nation's history.[36]

The judicial deliberations privilege implicates separation of powers because an examination of a judge's mental processes would be "destructive of judicial responsibility."[37] Indeed, Veskrna does not contest that any document falling under the judicial deliberations privilege would be constitutionally protected from a legislative mandate that it be disclosed.

"Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process."[38] Without such candor in our deliberative process, we cannot perform our essential function of deciding the cases before us.

But, similar to the executive privilege demarcated in *United States v. Nixon*, the confines of the judicial deliberations

---

[35] Charles W. Sorenson, Jr., *Adopting the Judicial Deliberations Privilege: Making Explicit What Has Been Implicit*, 95 (No. 4) Mass. L. Rev. 243, 243 (2014).

[36] See, Robert S. Catz & Jill J. Lange, *Judicial Privilege*, 22 Ga. L. Rev. 89 (1987); Charles W. Sorenson, Jr., *Are Law Clerks Fair Game? Invading Judicial Confidentiality*, 43 Val. U. L. Rev. 1 (2008).

[37] *United States v. Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429 (1941).

[38] *United States v. Nixon, supra* note 31, 418 U.S. at 705.

privilege must not be so broad that it upsets the balance of a workable government comprised of overlapping powers.[39]

[14] We find that the proper constitutional balance requires a narrowly tailored, albeit absolute, judicial deliberations privilege. The description of this privilege in *In re Enforcement of Subpoena*[40] is most apt, and we hereby adopt it. The privilege

covers a judge's mental impressions and thought processes in reaching a judicial decision, whether harbored internally or memorialized in other nonpublic materials. The privilege also protects confidential communications among judges and between judges and court staff made in the course of and related to their deliberative processes in particular cases.[41]

From our examination of the records in this case, we conclude they do not fall under the judicial deliberations privilege just described. Fundamentally, the records do not relate to particular cases under deliberation.

Finding that the judicial deliberations privilege does not apply to the documents contained in exhibit 4 does not end our separation of powers analysis. As we have explained, the ultimate inquiry when faced with the overlapping exercise of constitutionally delegated powers is the extent to which one branch is prevented from accomplishing its constitutionally assigned functions, balanced against the other branch's need to promote the objectives within its constitutional authority.

[15] We do not hold that the judicial deliberations privilege is either the floor or the ceiling of separation of powers conflicts between the judiciary and the Legislature as relate to the public records statutes. Neither do we accept any clear demarcation in a separation of powers analysis between "chambers

---

[39] *United States v. Nixon, supra* note 31.

[40] *In re Enforcement of Subpoena*, 463 Mass. 162, 972 N.E.2d 1022 (2012).

[41] *Id.* at 174, 972 N.E.2d at 1033.

records" and "administrative records" independent of the content of those records.[42] Whether preservation of the essential functions of the judicial branch requires the confidentiality of JBE records is to be determined on a case-by-case basis in accordance with existing rules promulgated by this court, the judicial deliberations privilege, and state constitutional principles respecting the proper balance between the coordinate branches.

Examining the documents contained in exhibit 4, we can find through their disclosure no meaningful impairment of our constitutionally assigned functions. The JBE materials contained in exhibit 4 have an exceedingly tenuous connection to any judge's mental processes. Veskrna did not ask to know which judges attended the JBE sessions at issue. He did not ask for any information concerning questions or comments made by the attending judges.

The presenters' identities and the content of their presentations, alone, does not reveal the attending judges' mental processes any more than an examination into the classes that the judges took in law school. Thus, disclosing the JBE records in this case does not create a meaningful risk of tempering the candor essential to the judicial decisionmaking process. Steel presents no other argument that disclosure of these records unduly interferes with our essential functions, and we can find none.

Having found no unacceptable intrusion into our judicial branch activities through the disclosure of exhibit 4, we affirm the judgment of the lower court, including its decision to redact a judge's internal email. The ruling redacting the email was not assigned as error in Veskrna's cross-appeal. Having affirmed the writ, we need not address Veskrna's cross-appeal concerning the admissibility of paragraph 12 of McMahon-Boies' affidavit.

---

[42] See brief for appellee at 36.

This court makes no statement about the confidentiality of other JBE records in light of our constitutionally delegated powers or the adoption of an official court rule. And we do not make any statement related to questions concerning JBE records not properly preserved and presented in this appeal. Our holding in this case does not limit the power of this court under article II, § 1, and article V, § 1, of the Nebraska Constitution to regulate the confidentiality of JBE materials, and it does not, in particular, limit that power to the confines of the judicial deliberative privilege.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court granting Veskrna access to the records found in exhibit 4, with the specified email redacted, and its order awarding costs and attorney fees.

AFFIRMED.

HEAVICAN, C.J., not participating.